IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NIPA CHADWICK,                                CV 07-1367-MA

           Plaintiff,                         OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

           Defendant.

DAVID B. LOWRY
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, OR 97223
(503) 245-6309

           Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

L. JAMALA EDWARDS
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3749

          Attorneys for Defendant

MARSH, Judge.

        Plaintiff Nipa Chadwick seeks judicial review of a final
decision of the Commissioner denying her November 1, 2004,
applications for disability insurance benefits under Title II
of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental
security income benefits under Title XVI of the Social Security
Act, 42 U.S.C. §§ 1381-83f.

        Plaintiff alleges she has been disabled since January 1,
2004, because of Type II diabetes mellitus with neuropathy,
hypertension, sleep difficulties, vision problems with fatigue,
pain, dizziness, and depression.  Plaintiff's disability claim
was denied initially and on reconsideration.  The Administrative
Law Judge (ALJ) held a hearing on February 7, 2007, at which
plaintiff and a vocational expert testified.  On February 15,
2007, the ALJ issued a decision that plaintiff was not disabled.
On June 5, 2007, the Appeals Council denied plaintiff's request
for further review.  The ALJ's decision, therefore, was the
Commissioner's final decision for purposes of judicial review.

        Plaintiff seeks an Order from this court reversing the
Commissioner's final decision and remanding the case for

2  - OPINION AND ORDER

supplemental proceedings with directions to the ALJ to order consultative psychological and physical examinations and for further development of the record based on those examinations. For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since April 1, 2001, the alleged onset date of her disability.

At Step Two, the ALJ found plaintiff suffers from diabetes mellitus and hypertension, which are severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found these impairments do not meet or equal listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii) and (d), and § 416.920 (a)(4)(iii) and (d). The ALJ found plaintiff

has the residual functional capacity to lift 20 lbs occasionally and 10 lbs frequently, to stand, walk, and sit six hours in an eight-hour day.  She should not climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to heights and moving machinery.  She has basic English language skills, more so speaking rather than reading or writing.

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as an electronics solderer and assembler, PC board inspector, and pocket knife assembler.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

<u>**LEGAL STANDARDS**</u>

The initial burden of proof rests on the claimant to establish disability.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere

4 - OPINION AND ORDER

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, i.e., a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense. 20 C.F.R. §§ 404.1519, 416.919. Reed v. Massinari, 270 F.3d 838, 841 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the

court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a
social security case should be remanded."  Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

### ISSUES ON REVIEW

Plaintiff contends the ALJ erred in (1) failing to give
clear and convincing reasons for rejecting her testimony,
(2) failing to order a consultative medical examination to assess
the severity and functional limitations of plaintiff's anxiety,
and depression, (3) failing to adequately assess plaintiff's
residual functional capacity, and (4) failing to give an adequate
hypothetical to the vocational expert (VE).

### PLAINTIFF'S TESTIMONY/EVIDENCE

The following evidence is drawn from plaintiff's hearing
testimony, disability application, and work and earnings history
reports.

Plaintiff was 57 years old on the date of the hearing before
the ALJ.  She was born in Thailand where she had two years of
schooling.  She emigrated to the United States in 1976.  She
learned English by watching Sesame Street on television.  She
does not read or write English well.

Plaintiff's past relevant work includes jobs as a solder
operator, production assembler, and electronics assembler.  She

6 - OPINION AND ORDER

last engaged in substantial gainful activity in April 2001, when she was laid off for lack of work.  She received unemployment insurance benefits for a period of time after she was laid off. She has worked at temporary jobs since April 2001, but none of them involved substantial gainful activity.  She has not tried to work since 2004 because of dizziness.

Plaintiff was diagnosed with Type II Diabetes in 2000.  She suffers from dizziness and has difficulty sleeping because of leg pain, which includes burning, tingling, and numbness, more pronounced in the right rather than the left leg.  She sometimes makes up for lack of sleep by taking naps during the day. Plaintiff also suffers pain in her hands, which makes it difficult for her to grip small objects.  She has some difficulty doing certain chores such as laundry and housecleaning.  She is able to do some cooking, usually noodles with vegetables.  She no longer goes out much because of the pain in her legs and dizziness and usually has someone with her when she leaves the house.  She has to sit down and rest for 10-15 minutes after walking from room-to-room in her house.

Plaintiff takes care of her roommate's sister who has a mental impairment.  She is paid $171.00 per month by the State of Oregon for performing that service.  She makes sure proper medication is taken twice a day and sometimes prepares meals.

Plaintiff has difficulty with short-term memory, for instance, forgetting what she went to the store to buy or why she went into a particular room in her house.

Plaintiff cannot afford all the medication she needs and as a result she suffers from headaches sometimes twice a day.

### MEDICAL TREATMENT EVIDENCE

Plaintiff contends she has received limited medical care and has not always sought medical treatment because of her poverty. Her medical care since 2001 has been provided primarily through Providence Medical Group, except for a period from July 2002 – January 2003, when she was treated at the Mullikin Medical Center.  Her medical care has primarily involved treatment for symptoms relating to her diagnoses of diabetes, hypertension, and coughs.  She has also received annual physical exams.

In December 2001, plaintiff complained of frequent headaches that resolved when she took two Advil.  She also complained of pain in both feet.  She was diagnosed with Diabetes in 1999.  She has a glucose monitor at home and was referred to the pharmacy to obtain training in how to use it.  She was prescribed medications for her diabetes and advised to exercise regularly.

In January-February 2002, plaintiff was treated on three occasion for flu symptoms involving a cough and congestion.  She underwent an annual GYN physical and PSTV Pap Smear with normal

results.  She was advised on several occasions to exercise
regularly.

In May 2002, plaintiff complained of a burning sensation in
her feet and abdominal pain likely caused by gas.  A "diabetic
foot exam," however, was normal.  She was taking medication for
her diabetes but was not using the blood/sugar monitor.  She was
advised about good diabetic control.  Plaintiff was also advised
to try Nortriptyline, an anti-depressant medication.

From July 2002 through January 2003, plaintiff was treated
primarily for symptoms relating to diabetes and a cough.  She
complained of tingling in her hands and feet.  The circulation in
her feet was "ok."  She did not check her blood sugar levels
because she was "chicken."  She did not take her blood pressure
medication unless she experienced symptoms such as headaches.
She was advised to attend diabetes education classes and to take
her medication regularly as prescribed.  She was continued on her
prescriptions:  Lotensin for high blood pressure, Albuterol for
her cough, as well as the Nortriptyline.

There is no record of medical treatment from January 2003
until August 7, 2005, when plaintiff visited Providence Medical
Group, while ostensibly accompanying her sister-in-law to a
medical appointment.  While there, she began crying and told her
sister-in-law's doctor, Kristina Rashid, M.D., that she had

diabetes and high blood pressure but could not see a doctor because she had no insurance.  She was not taking medications but sometimes "borrowed" her friend's diabetes medication.

Dr. Rashid examined plaintiff, who appeared to be well-nourished, healthy appearing, and in no acute distress. Plaintiff's mental status was "grossly normal" but she "cries because of feeling worried/anxious about her health."  Dr. Rashid reviewed and updated plaintiff's medications.

On August 9, 2005, during a follow-up visit, Dr. Rashid found plaintiff's hypertension was "much improved" because she was taking medications.  Plaintiff stated she was "feeling much better" and on examination, appeared to be well-nourished, healthy appearing, and in no acute distress.

On September 6, 2005, plaintiff's hypertension was still much improved by her medication.  She had stopped taking her diabetes medication, Metformin, because she could not afford it. She felt slightly dizzy.

On November 1, 2005, plaintiff's hypertension was better while she was on medications, but was "very high" without them. Plaintiff was not compliant with her medications.  She was aware she needed to take her medications regularly.  She was not checking her blood sugars regularly because she was afraid to check them.  She was not taking diabetes education classes

because of the cost.  Dr. Rashid was to check whether plaintiff could obtain financial assistance to attend such classes.

On November 8, 2005, plaintiff's hypertension was well-controlled on her current medications.  She had no weakness or numbness/tingling in her lower extremities.  Recently, she had not been taking medications regularly to control her diabetes. She expressed interest in diabetes classes.  She was advised to walk regularly and watch her diet.  Plaintiff's mental status was grossly normal.

On December 6, 2005, plaintiff's blood pressure was high because she was out of medications and could not afford them. She was also out of medications for controlling her diabetes and she was not checking her blood sugar levels.  She had not signed up for diabetes education classes because "she had too much going on lately."  She "tries to exercise but [it is] sometimes hard to make time for this."

On December 27, 2005, plaintiff was treated for a cough. Her blood pressure was high but she was taking medications.

On January 6, 2006, plaintiff's blood pressure was "not ideal" but was "better than it has been."  Her diabetes was still not under good control.  Plaintiff was running out of medication samples and requested more.  She was still not checking her blood sugar levels regularly.  She was "too busy" to attend diabetes

education classes.

On January 16, 2006, plaintiff complained of an acute onset of sweating and nausea during which she felt the room was spinning.  On a follow-up visit the next day, plaintiff's blood pressure was under good control and she felt better.  She was under stress caring for her sister-in-law who has significant mental illness.

On February 10, 2006, plaintiff was having no problems with diabetes medications and was aware that she needed to work on more frequent exercise and diet control.

On June 6, 2006, plaintiff complained of being mildly lightheaded during the past week.  Her blood pressure was high and she was not checking it at home.  As for her diabetes, plaintiff was not checking her blood sugar levels, was not taking all of her medications, and was not exercising much.

On June 9, 2006, plaintiff complained of dizziness and fatigue.  Her diabetes was stable with medications.  Her mental status was grossly normal.

On November 14, 2006, plaintiff complained of right shoulder/arm pain for several months causing her difficulty sleeping.  She was taking her hypertension medications but was not checking her blood pressure regularly.  She was also taking her diabetes medications but not checking her blood sugar levels

regularly.  She was stressed because she had difficulty paying her medical bills and has "trouble completing [a] financial assistance application."  She was tearful and the doctor "suspect[ed] depression."

## MEDICAL EVALUATION EVIDENCE

### Examining Physician.

On November 20, 2004, John H. Ellison, M.D., examined plaintiff.  He diagnosed (1) hypertension, (2) uncontrolled diabetes mellitus, (3) peripheral neuropathy, limbs, mild, and (4) probable acid reflux disease, and gallstones.  He assessed functional limitations that included walking no more than 100 feet without resting, limited handling of objects due to a tendency to drop items, and no lifting of more than 10 lbs for five minutes at a time.  She is generally able to take care of herself.

### Consulting Physicians.

Internist, Sharon Eder, M.D., and Physical Medicine and Rehabilitation Specialist Linda Jensen, M.D., reviewed plaintiff's medical records to assess her residual function capacity.  They concluded plaintiff was limited to lifting 20 lbs occasionally and 10 lbs frequently, standing, walking, and sitting for six hours in an eight-hour workday, an no balancing. They found no communicative or environmental limitations.

13 - OPINION AND ORDER

**Consulting Psychologists.**

Psychologists Paul Rethinger, Ph.D. and Robert Henry, Ph.D.,
reviewed plaintiff's medical records and concluded she has no
medically determinable psychological limitations.

### VOCATIONAL EXPERT (VE) TESTIMONY

VE Scott Stipe identified plaintiff's past relevant work
as including light, semi-skilled work as an electronics solderer,
electronics assembler, and pocket knife assembler.  The VE opined
that someone of plaintiff's age, education and experience, with
her basic English skills and physical limitations could perform
her past relevant light work activities.

### ANALYSIS

a.   Rejection of Plaintiff's Testimony.

Plaintiff contends the ALJ failed to give clear and
convincing reasons for not crediting her testimony regarding
the severity of her physical and psychological impairments.
I disagree.

A claimant who alleges disability based on subjective
symptoms "must produce objective medical evidence of an
underlying impairment 'which could reasonably be expected to
produce the pain or other symptoms alleged. . . .'"  Bunnell v.
Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C.

§ 423(d)(5)(A) (1988)).  <u>See</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403,
1407-08 (9th Cir. 1986).  The claimant need not produce objective
medical evidence of the symptoms or their severity.  <u>Smolen v.</u>
<u>Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying
impairments could cause the pain complained of and there is not
any affirmative evidence to suggest the claimant is malingering,
the ALJ is required to give clear and convincing reasons for
rejecting plaintiff's testimony regarding the severity of her
symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).
<u>See</u> <u>also</u> <u>Smolen</u>, 80 F.3d at 1283.  To determine whether the
claimant's subjective testimony is credible, the ALJ may rely on
(1) ordinary techniques of credibility evaluation such as the
claimant's reputation for lying, prior inconsistent statements
concerning the symptoms, and other testimony by the claimant that
appears less than candid; (2) an unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; and (3) the claimant's daily activities.
<u>Id</u>. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is malingering.
The ALJ also found plaintiff's medically determinable impairments
could reasonably be expected to produce the symptoms of which she
complains.  Nevertheless, the ALJ also found plaintiff was "not

entirely credible" in describing the "intensity, persistence, and limiting effects of these symptoms."  The ALJ notes plaintiff quit working full-time not because of her impairments but because she was laid off.  She then received unemployment benefits, thereby indicating she was able to work.  She minimized her physical activity in caring for her roommate.  She was too busy to attend diabetes education classes and found it difficult to make time for the exercises prescribed for her.  She also failed to check her blood sugar levels and blood pressure on a regular basis, as her doctor repeatedly advised her to do.

On this record, I find the ALJ gave clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her allegedly disabling impairments.

b.    <u>Failure to Order a Consultative Medical Examination</u>.

Plaintiff contends the ALJ should have fully developed the record by ordering that plaintiff undergo a consultative examination to assess the severity and functional limitations of her anxiety and depression.  I disagree.

As set forth above, plaintiff had the initial burden of presenting evidence that she suffers from depression and that it is a severe impairment. <u>Roberts</u>, 66 F.3d at 182    If after all the evidence is presented, there were any ambiguity as to whether plaintiff suffered from severe depression, the ALJ had the duty

16 - OPINION AND ORDER

to develop the record by ordering a consultative examination.
Reed, 270 F.3d at 841.

The ALJ found, although plaintiff reported symptoms of
depression on one occasion, she has required no mental health
treatment and had recently been prescribed medication on a trial
basis.  The record reflects plaintiff's mental health has
consistently been described as "grossly normal," and during her
examination by Dr. Ellison, she denied "serious depression."
Although plaintiff contends her lack of financial resources has
precluded her from seeking treatment for her mental health
conditions, the record reflects plaintiff has received medical
care from Providence Medical Group on a regular basis since mid-
2005 for all her claimed impairments and has obtained necessary
medication during the course of that treatment.  The record
reflects plaintiff often does not follow her doctor's advice
regarding treatment and does not take the medications as
prescribed.  The record also reflects that her reluctance to
follow medical advice is not so much triggered by the cost of
treatment, but by her refusal to follow instructions and/or to
make the time necessary to exercise and to attend classes to
learn how to better treat her diabetes.

On this record, I conclude the ALJ did not err in failing to
further develop the record by ordering a consultative medical
examination regarding the severity of plaintiff's depression.

17 - OPINION AND ORDER

(3)  <u>Failure to Adequately Assess Residual Functional Capacity</u>.

Plaintiff contends the ALJ erred in failing to include functional limitations found in August 2005 by examining physician, Dr. Ellison, relating to "possible carpal tunnel syndrome" and "peripheral neuropathy, mild" in the assessment of plaintiff's residual functional capacity.  They include the limited ability to walk more than 100 feet without resting, and to lift more than 10 lbs for more than five minutes.  I disagree.

The ALJ must give "clear and convincing reasons" for rejecting the uncontradicted disability opinion of an examining physician, or for adopting the opinion of agency physicians over that of the examining physician.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ gave "little weight" to Dr. Ellison's opinion because the opinion was "based on [plaintiff's] subjective symptoms."  The ALJ noted Dr. Ellison's findings that plaintiff's elbow joints, wrist joints, and finger and thumb joints, on flexion, were within normal limits.  While there was evidence of "mild peripheral neuropathy," plaintiff was taking only Advil for pain complaints.  Moreover, plaintiff did not report any hand or leg pain of the kind described by Dr. Ellison during subsequent physical examinations through Providence Medical Group.

18 - OPINION AND ORDER

On this record, I find the ALJ gave clear and convincing reasons for rejecting Dr. Ellison's opinion regarding plaintiff's physical limitations.

(4)  <u>Failure to Provide Adequate VE Hypothetical</u>.

Plaintiff contends the ALJ erred by asking the VE only whether she could perform her past relevant work if she was able to perform "light" work.  I disagree.

The ALJ's hypothetical to the VE included plaintiff's ability to perform:

> light work and all the lifting and carrying;
> standing; walking and sitting categories.
> Should use no ladders, ropes, or scaffolds.
> Should avoid concentrated hazards such as
> heights and moving machinery, and would only
> have basic English skills, speaking better
> than writing and [reading].

Tr. 298.  Plaintiff contends the ALJ should have provided a hypothetical that included every limitation, function-by-function.  The essence of plaintiff's argument is that the ALJ did not include functional limitations suggested by the medical evidence, from plaintiff's point of view.  The court, however, has already concluded the ALJ appropriately rejected plaintiff's view of the medical evidence.  The ALJ stated in the hypothetical to the VE only those limitations that were supported by substantial evidence.  Based on this court's rulings, the ALJ's hypothetical accurately reflected plaintiff's workplace limitations.

**<u>CONCLUSION</u>**

For these reasons, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 21 day of January, 2009.


 /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

20 - OPINION AND ORDER